**Otie FARRA et al., Appellants,**

v.

**Cora JOHNSON et al., Appellees.**

Court of Appeals of Kentucky.

March 29, 1957.

J. B. Johnson, Harlan, for appellants.

Elwood Rosenbaum, Lexington, for appellees.

SIMS, Judge.

The sole question before us on this appeal is whether or not a tipple, side-track and other improvements used in connection with the operation of a coal mine materially enhanced the vendible value of the allegedly jointly owned land. It is insisted by the joint tenants who made the improvements that the court in partitioning the land should have alloted them the portion upon which the improvements

stand. On conflicting evidence the trial judge held the tipple and other improvements had not enhanced the vendible value of the land after the coal was exhausted and refused to so allot the land, but he did allow appellants to remove the sidetrack and the machinery in the tipple.

It is necessary to give a brief history of the land in dispute and of the mining operations thereon in order to properly understand this case. Tom and Lucy Johnson owned a large tract of land in Perry County which in 1909 they deeded to their four children, Joe, S. B., Cora and Mary. Each child was conveyed about 300 acres. In 1917 the four parties just named leased the mining rights in their lands to the Coneva Coal Corporation for a term of 99 years, reserving to themselves the privilege of cultivating the lands. The lessors were to receive a royalty of 8¢ per ton, and after two years the minimum royalty was to be $2000 annually. Apprehending that some question might arise as to the division of the royalty while the four lessors owned separate lands, in 1919 the four deeded back to each other all the lands set out in the original deeds their parents had made to them, with certain minor exceptions. Therefore, the entire tract became the undivided land of the four Johnson children.

Coneva mined the property until 1930 when it got into financial difficulties and was thrown into receivership. Joe then organized the Chavies Coal Company which took over the assets of Coneva, and Chavies mined the property until 1936, by which time practically all merchantable coal had been exhausted, making a large operation unprofitable. The mine lay dormant until 1942 or 1943 when Otie Farra and Malta Little, the children of Mary, took over the mine and some of the equipment Joe had left in it and operated the mine in a small way. Joe who was the moving spirit and financier of the family, suggested to his nieces Otie and Malta that they could operate a truck mine and make some money during World War II. Joe loaned them $2600.

The coal market slumped in 1948 and it became necessary to produce a better grade of coal. Otie and Malta spent some $15,000 in building a tipple, sidetrack and ramp, all of which covered a strip of land about 30 feet wide and 100 feet long, the land itself being worth around $200. The record plainly shows this strip of land was part of the tract originally conveyed to Cora by her parents. From time to time Cora received royalties from the operations carried on by Otie and Malta.

This action was filed in equity in 1950, a practice followed under our Civil Code of Practice before our Civil Rules of Procedure became effective on July 1, 1953, and involved the various members of the Johnson family who made claims against each other totaling more than half a million dollars, and a record was made of some 1400 pages. When the Civil Rules of Procedure became effective the parties to this action entered an agreed order that it would be practiced under the Civil Code of Practice which was in effect before the Civil Rules were adopted. All questions in the controversy were disposed of before this appeal was brought except the one now before us as to whether the tipple, sidetrack and ramp materially enhanced the vendible value of the land upon which they stood, thus reducing the record on this appeal to less than 300 pages. We make this reference to the action because the four Johnsons sought a partition of the lands which their parents conveyed them and which the four put back in one large jointly owned tract soon after they executed the coal mine lease to Coneva. Thus the trial judge in the instant case was really by agreement of parties acting as a chancellor under our Civil Code of Practice in partitioning the land.

In an exhaustive and well reasoned opinion the chancellor held the parties

themselves had effectively partitioned this land in accordance with the deeds made them by their parents in 1909, and he adopted their actual partition of same as the judgment of the court. Here, the four Johnson children took possession of the land conveyed each of them by their parents in 1909, and exercised full dominion over it except as to the minerals. True, in 1919 each executed a deed conveying to the other three their respective land, but as previously pointed out in this opinion, that was done for convenience in dividing the coal royalties, and so far as the surface was concerned, each took possession and exercised control thereof. The chancellor cited and relied upon Helton v. Campbell, 155 Ky. 257, 159 S.W. 785; Conley v. Mayo, 157 Ky. 445, 163 S.W. 243; Riggsby v. Montgomery, 208 Ky. 524, 271 S.W. 564, which are to the effect that where joint owners of land take into their possession separate tracts which they hold and claim as their individual property over a long peroid of years, the presumption arises that a partition of the land was made by the parties.

■ We agree with the chancellor that in the circumstances shown by this record a partition was made of this land among the four Johnson children and each took what was conveyed him or her by their parents in 1909, despite their deeds in 1919 vesting the title jointly in the four. In this partitioning Cora got the same land conveyed to her by her parents, and the evidence establishes this tipple and sidetrack were erected on Cora's land.

■ The testimony is conflicting as to whether the tipple and sidetrack materially enhanced the vendible value of Cora's land. Otie and Malta testified they spent $15,146.40 on the tipple, ramp and sidetrack, which increased the value of Cora's land by two-thirds of that sum. They were supported in their testimony by Robert, James and Brown Deaton, as well as Jesse Combs, who helped build the improvements. Also, Dr. H. P. Duff, a general practitioner in the community who seems to have no special knowledge of mining, testified these improvements would increase the value of the farm about as much as they cost. Estill Mullins, a section foreman of the L. & N. R. R. Co., stated the value of the land was increased $12,000 by these improvements.

C. X. Johnson, Cora's husband, testified the improvements would not increase the value of the land unless the coal business was good. Richard Quillen, Chief Engineer of the Kentucky River Coal Company, who was not connected with any of the parties in this litigation and is a man who has had a long and broad experience in the coal business in Perry County, testified the tipple and other improvements would add nothing to the vendible value of this land.

We can readily see how the chancellor would accept the testimony of a man like Quillen as having more weight than that of the several witnesses testifying for Otie and Malta, who were their employees, with the exception of Dr. Duff, who could have had but little knowledge on the matter about which he was testifying. After stating that practically all the merchantable coal was mined from this property, the chancellor wrote, "What Mr. Quillen suggested seems true; neither the tipple nor the railroad siding site have any intrinsic value, nor do they enhance the vendible value of the property as a whole, unless and until another war or unusual mining activity should add a specific value."

■■ Under the Civil Code of Practice the rule was that the findings of fact of the chancellor will not be disturbed on appeal, even where the mind is left in doubt, unless the evidence clearly shows he was wrong. Shaw v. Farmers' Bank & Trust Co., 235 Ky. 502, 31 S.W.2d 893. Here, the chancellor was acting as special judge and he is a lawyer of unusual ability and one who has had much experience in litigation involving mineral lands and mining practices. The number of witnesses is not the controlling factor in deciding a case. Gil-

lam v. Qualls, 214 Ky. 436, 283 S.W. 396. The testimony of one witness who is an expert on the subject, or at least who is very well informed about it, sometimes is worth more than the testimony of numerous witnesses who are not so well qualified upon the subject. Our minds are not left in doubt as to the correctness of the finding of fact of the learned chancellor and his judgment is affirmed.